# In the United States Court of Federal Claims

No. 15-1279C

(Filed Under Seal:  March 4, 2016)

(Reissued for Publication:  March 14, 2016)

| | |
|---|---|
| ************************************* * * ALGESE 2 s.c.a.r.l., * * Plaintiff, * * v. * THE UNITED STATES, * * Defendant, * * and * * LOUIS BERGER AIRCRAFT SERVICES, * INC., * * Defendant-Intervenor. * * ************************************* * | Post-award Bid Protest; Offeror's Failure to Inform Navy of Parent Corporation's Corruption and Fraud in Multiple Government Procurements; Effect of Material Misrepresentations and False Certifications in Proposal; Permanent Injunctive Relief. |

*Kristen E. Ittig*, with whom were *Christopher R. Yukins* and *Lauren J. Schlanger*, Arnold & Porter LLP, Washington, D.C., for Plaintiff.

*Daniel S. Herzfeld*, with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Scott E. Miller* and *Eva Escalante*, Counsel, Naval Supply Systems Command, Department of the Navy, for Defendant.

*David M. Nadler*, with whom were *Adam Proujansky, David Y. Yang,* and *Philip E. Beshara,* Blank Rome LLP, Washington, D.C., for Defendant-Intervenor.

OPINION AND ORDER[1]

WHEELER, Judge.

This post-award bid protest presents the question of whether the Navy may award a contract to an offeror that has materially misrepresented and concealed its corporate parent's long history of public corruption and fraud in government procurement. For the reasons explained below, the Court finds that the awardee, Louis Berger Aircraft Services, in coordination with its corporate family, willfully and intentionally concealed criminal proceedings involving its parent and other Louis Berger entities. The failure to report the corruption and fraud in Louis Berger's proposal to the Navy constituted a material misrepresentation and a false certification to the United States. The Navy's affirmative determination of responsibility for Louis Berger Aircraft Services initially was based on a lack of knowledge, because the parent corporation's corruption and fraud had been concealed. Upon a later review when the corruption and fraud came to light in a bid protest, the Navy should have found Louis Berger Aircraft Services ineligible for award, but it did not. The Navy's actions in proceeding with an award to Louis Berger Aircraft Services were arbitrary, capricious, and without a rational basis. Accordingly, the Court permanently enjoins the Navy by requiring the termination of the contract award to Louis Berger Aircraft Services, and the cessation of any further performance under that contract.

I. Factual Background[2]

A. The Rota Solicitation

On March 2, 2015, the U.S. Department of the Navy issued the Solicitation at issue for air terminal and ground handling services at Naval Station Rota, Spain. Administrative Record ("AR") 167, 172. The Navy sought to procure these services for an eleven-month base period with four twelve-month option periods. AR 169-72. The Solicitation stated that the Navy would award the contract to the responsible offeror with a best value proposal based on a trade-off determination. AR 206-07. The Solicitation's evaluation factors

---

[1] The Court issued this decision under seal on March 4, 2016 and invited the parties to submit proposed redactions of any competitive-sensitive, proprietary, confidential, or other protected information on or before March 11, 2016. By that date, none of the parties proposed redactions. Thus, the Court reissues the opinion in its entirety for publication.

[2] The facts in this decision are taken from the administrative record, as supplemented. The pages in the administrative record are numbered in sequence, and the documents are divided by tabs. The Court's citations to the administrative record generally are to the page numbers. A few citations are to other sources, of which the Court takes judicial notice.

included technical capability, past performance, and price.  AR 204.  The Navy would evaluate an offeror's technical capability on an acceptable/unacceptable basis.  AR 204-05.  Only offerors the Navy rated as "acceptable" on technical capability would be eligible for award.  Further, the Solicitation stated the Navy would consider past performance and price using a trade-off process in which past performance is more important than price.  AR 205-06.  To be eligible for the award, the offeror needed to be responsible, including a "satisfactory record of integrity and business ethics. . . ."  AR 207.

The Navy received proposals from Plaintiff Algese 2 s.c.a.r.l. ("Algese"), incumbent and awardee Louis Berger Aircraft Services, and a third offeror.  After reviewing both Algese's and Louis Berger Aircraft Services' revised proposals, the Navy gave Algese and Louis Berger Aircraft Services acceptable ratings for technical capability and "substantial confidence" for past performance, making price the determining factor.  AR 1112-14.  Louis Berger Aircraft Services' price was four percent lower than Algese's price.  The Contracting Officer determined that Louis Berger Aircraft Services was responsible.  Algese challenges this determination in the present bid protest.  The Contracting Officer recommended award to Louis Berger Aircraft Services.  AR 1112.

B.   Louis Berger History of Corruption in Public Procurement

The awardee, Louis Berger Aircraft Services, is part of a family of companies controlled by Berger Group Holdings, Inc.  AR 1408-09.  The Louis Berger family of corporations is described graphically below.[3]  See AR 1408-15 (describing corporate structure).



At the time of Louis Berger Aircraft Services' certification and proposal submission on April 6, 2015, the Louis Berger family of companies had faced, and was facing,

---

[3] The chart does not include all Louis Berger companies, merely those at issue in this protest.

government investigations and prosecution for fraud and bribery related to multiple procurements around the world. As discussed below, Louis Berger Aircraft Services failed to disclose these public integrity issues that the Louis Berger family of companies faced.

On December 12, 2014, Derish Wolff, the former chairperson of Louis Berger Aircraft Services' parent corporation Berger Group Holdings, pleaded guilty to a 20-year conspiracy to defraud the federal government. Two years after the Louis Berger Group and two of its executives confessed to fraud, Mr. Wolff admitted to directing the subsidiary to defraud the U.S. Agency for International Development ("USAID") by obtaining payment on fraudulent contractual claims in violation of the U.S. False Claims Act. AR 1432. Louis Berger Group, an affiliated subsidiary, "intentionally overbilled USAID in connection with . . . [government] contracts. The scheme to defraud the government was carried out by numerous [Louis Berger Group] employees at the direction of Wolff." See Office of the U.S. Attorney, District of New Jersey, Press Release: Former Louis Berger Group Inc. Chairman, CEO, and President Admits 20-Year Conspiracy to Defraud Federal Government (Dec. 12, 2014) https://www.fbi.gov/newark/press-releases/2014/former-louis-berger-group-inc.-chairman-ceo-and-president-admits-20-year-conspiracy-to-defraud-federal-government. Mr. Wolff agreed to a twelve-month sentence of home confinement and a $4.5 million fine. Four years earlier, Louis Berger Group entered into a deferred prosecution agreement with the U.S. Attorney's Office in New Jersey regarding this same misconduct. AR 1325. As part of the 2010 deferred prosecution agreement, Louis Berger Group agreed to take action against those senior executives responsible for the fraud. AR 1325. On August 23, 2010, Derish Wolff announced his retirement from Berger Group Holdings. See Louis Berger, Press Release: Chairman of Berger Group Holdings, Inc. Retires After 48 Years of Service (Sept. 14, 2010), http://www.louisberger.com/news/chairman-berger-group-holdings-inc-retires-after-48-years-service.

On July 7, 2015, Berger Group Holdings and Louis Berger International, Inc. entered into a deferred prosecution agreement with the New Jersey U.S. Attorney's Office for violations of the Foreign Corrupt Practices Act between 1998 and 2010. AR 1346-1407. Importantly, Louis Berger International was not formed until 2012, two years after the end of the bribery at issue ended. As such, the unsealed criminal complaint addressed the actions of "Louis Berger International, Inc. ('LBI'), . . . a wholly-owned subsidiary of Berger Group Holdings, Inc. ('BGH'), [which] . . . as part of a corporate restructuring assumed responsibility for all international operations and liabilities of BGH previously conducted by other BGH subsidiaries or affiliates (hereinafter collectively referred to as 'the Company')." AR 1372. After including Berger Group Holdings in the definition of "Company", the criminal complaint charged a decade-long conspiracy "to make and conceal corrupt payments to foreign officials in India, Kuwait, Vietnam and elsewhere in

order to obtain and retain contracts with government entities. . . ." Compl. at 2, 4, United States v. Louis Berger Int'l, Inc., Mag. No. 15-3624 (MF) (D.N.J.).

Under the 2015 deferred prosecution agreement, Berger Group Holdings "agree[d] to certain terms and obligations . . . to ensure compliance by BGH [Berger Group Holdings] and its subsidiaries and affiliates" with the terms of the agreement. AR 1346. Further, Berger Group Holdings was extensively involved in the investigation of the Foreign Corrupt Practices Act violations and fashioning remedial efforts, such as firing responsible employees at its subsidiary and improving compliance efforts across the Berger Group family of corporations. AR 1348. The deferred prosecution agreement remains in effect to date. See AR 1347 (explaining the agreement remains in place for three years from the date of the criminal complaint).

In February 2015, the World Bank sanctioned two Louis Berger companies. The World Bank debarred Louis Berger Group and imposed a one-year conditional non-debarment on Berger Group Holdings for making corrupt payments to government officials in Vietnam. AR 1467. Under a conditional non-debarment, the World Bank has determined that the party bore "some responsibility" for the sanctionable conduct but was not directly involved. World Bank Group [WBG], World Bank Sanctioning Guidelines at 2. However, in the event that the sanctioned party fails to demonstrate compliance with the terms established by the World Bank Sanctions Board, a "debarment would automatically become effective. . . ." Id. Berger Group Holdings "failed to effectively supervise [Louis Berger Group] and thus bears responsibility for [Louis Berger Group's] misconduct." Id. "Under the terms of the sanctions, [Louis Berger Group] and [Berger Group Holdings] must take appropriate remedial measures to address the misconduct for which they have been sanctioned. . . ." AR 1467. As a result of the debarment, Louis Berger Group is ineligible for contracts from at least one federal agency. See Millennium Challenge Corporation, MCC Program Procurement Guidelines (Aug. 15, 2015), https://www.mcc.gov/resources/doc/program-procurement-guidelines#heading191.

### C. Louis Berger Representations and Certifications

The Solicitation at issue called for certifications and representations regarding the offerors' records for integrity including those listed in Federal Acquisition Regulation ("FAR") 52.212-4(t). This provision requires offerors to complete the certifications mandated by the System for Award Management page ("SAM"),[4] including "Certification

---

[4] The System for Award Management is "the Official U.S. Government system that consolidated the capabilities of CCR/FedReg, ORCA, and EPLS." System for Award Management (Feb. 19, 2016, 10:04 A.M.), https://www.sam.gov (last visited March 3, 2016).

5

Regarding Responsibility Matters." FAR 52.209-5; see AR 1287 (Louis Berger Aircraft Services' certification). Also, the Solicitation included "Information Regarding Responsibility Matters" which requires the offeror to post the certifications therein in the Federal Awardee Performance and Integrity Information System ("FAPIIS"). FAR 52-209-7.

Despite the Louis Berger companies' history of public corruption, Louis Berger Aircraft Services represented that neither it nor its principals are "presently indicted for, or otherwise criminally . . . charged with" fraud, bribery, or a criminal offense in connection with obtaining or performing a public contract. AR 1287 (incorporating FAR 52.209-5). Similarly, Louis Berger Aircraft Services claimed neither it nor "any of its principals . . . within five years, in connection with the award to or performance by the offeror of a Federal contract or grant, [have] been the subject of a proceeding . . . that resulted in a . . . conviction." AR 1278-1320 (incorporating FAR 52.209-7). Both FAR provisions define "principal" as an "officer, director, owner, partner, or a person having primary management or supervisory responsibilities within a business entity. . . ." FAR 52.209-5(a)(2).

The Navy's review of the SAM and FAPIIS revealed no adverse integrity reports. AR 1465. Indeed, as another Louis Berger affiliate company conceded, essentially no Louis Berger entity, including Louis Berger Aircraft Services, disclosed the above-mentioned history of integrity violations and investigations in the certifications required for SAM or FAPIIS. AR 1737-44.

### D. Navy's Review of Integrity Issues

The Navy was unaware of any of the public corruption investigations involving Louis Berger companies, until Algese filed a GAO protest regarding award of a parallel Navy contract at Sigonella, Italy ("Sigonella Protest"). Hr'g Tr. at 20, Dec. 22, 2015. On August 11, 2015, five months after the Navy issued the Solicitation in this case, Algese filed its Sigonella Protest noting significant integrity issues with the Louis Berger companies. Specifically, Algese questioned why the Navy awarded the contract to a Louis Berger affiliate that did not disclose integrity failures of its parent and affiliated companies in its certification under FAR 52.209-5. AR 1448-53. Substantially, this is the same issue Algese raises in the present protest.

Days after Algese filed its Sigonella Protest, Navy Acquisition Integrity Office attorney Isaac Natter emailed the Navy's attorneys responsible for the Sigonella Protest and for the Rota procurement. AR 1524-26. Mr. Natter commented that "it is possible [the Louis Berger awardee in the Sigonella procurement] may have made a false certification in connection with [its] proposal." AR 1516-18. After commenting that Louis

Berger International was indicted for violating the Foreign Corrupt Practices Act on July 7, 2015, Mr. Natter noted that the indictment defines "the Company" to include Berger Group Holdings, the parent corporation, its subsidiaries and affiliates. "Moreover, [Louis Berger International] did not exist until 2012, while the FCPA violations charged in the indictment took place between 1998 and 2010. . . . Therefore, the indictment could be read broadly to encompass [Berger Group Holdings], or narrowly to only be against [Louis Berger International]." AR 1516-18.

The Navy attorney handling the Rota procurement agreed that Berger Group Holdings "would likely be considered a principal [of Louis Berger International]," but questioned whether Berger Group Holdings' role would rise to the level of requiring disclosure in the certification. Then, he suggested Mr. Natter follow up with the Assistant U.S. Attorney responsible for the 2015 deferred prosecution agreement to discuss Berger Group Holdings' role. AR 1514-16. On September 1, 2015, Mr. Natter reported his conversation with the Assistant U.S. Attorney:

> [The Assistant U.S. Attorney] confirmed [Berger Group Holdings] was not criminally charged; he also told me that [Berger Group Holdings] was very careful to carve out that [Louis Berger International] was the defendant in the criminal (FCPA) complaint, and he [the Assistant U.S. Attorney] believed that it was to avoid any requirement that its numerous subsidiaries have to disclose the FCPA matter.

AR 1513-14.

The next day, September 2, 2015, the Navy attorney responsible for the Rota procurement e-mailed the contracting officers about the 2015 deferred prosecution agreement. Berger Group Holdings "was very careful not to be a named a defendant and to avoid reporting requirements." AR 1507. Meanwhile, Louis Berger Aircraft Services sent a letter to the Navy responding to certain responsibility questions prompted by the Navy's discovery of Mr. Wolff's guilty plea and the 2015 deferred prosecution agreement. AR 1417-25. Louis Berger Aircraft Services responded that all representations and certifications regarding the Rota procurement were accurate and complete despite failing to disclose the above-described integrity concerns. AR 1417.

During this time, Algese's Sigonella Protest continued at the GAO. On September 1, 2015, the Navy announced it would take corrective action in Sigonella after the GAO denied the Navy's motion to dismiss. The Navy stated that it intended to "reassess, and document, its responsibility determination and past performance evaluation of [the Louis

Berger affiliate] in accordance with FAR Subparts 9.1 and 42.15. . . .  The [Navy's] corrective action is intended to ensure a fair and impartial competition and to address the concerns raised in the protest." AR 1748.  In the Sigonella Protest, Algese alleged the integrity failures discussed above and noted that none of over 60 Louis Berger subsidiaries and affiliates had disclosed any integrity failures as part of the required certifications under FAR 52.209-5(b).  AR 1718-19, 1738-44.

### E. Navy's Responsibility Determination

In its written responsibility determination for the Rota procruement, the Navy Contracting Officer awarded Louis Berger Aircraft Services the contract. AR 1121. He reviewed information about criminal and civil misconduct of multiple Louis Berger entities unearthed by Algese during its Sigonella protest, including Derish Wolff's plea agreement and both deferred prosecution agreements. AR 1115-19.

Rightly, the Contracting Officer concluded that Louis Berger Aircraft Services was not directly implicated in any of the public integrity scandals.  Having been presented with evidence of misconduct by the parent and affiliated companies, the Contracting Officer examined the Louis Berger entity's corporate structure to determine if Louis Berger Aircraft Services had a duty to report the public corruption scandals involving its parent and sister companies.  He said that no reporting duty existed.  The Contracting Officer concluded that "all representations and certifications provided by [Louis Berger Aircraft Services] are accurate and that [Louis Berger Aircraft Services] has not made any false certification" by failing to disclose its parent's and sister corporations' misconduct. AR 1120.  He determined Louis Berger Aircraft Services "to be responsible as required by FAR 9.104-1." AR 1120.

### F. Notice of Award and Navy Debriefing

On October 7, 2015, the Navy notified Algese that it had awarded the contract to Louis Berger Aircraft Services. AR 1603. The Navy stated that both Louis Berger Aircraft Services and Algese were assigned "acceptable" technical ratings and past performance ratings of "substantial confidence." Id. However, Algese's price was higher than that of Louis Berger Aircraft Services. Thus, "[t]he Government conducted a tradeoff analysis in accordance with the solicitation and FAR 15.101-1 and selected Louis Berger Aircraft Services as the awardee." Id.

On October 20, 2015, the Navy held a telephonic debriefing with Algese.  The Navy stated that it considered integrity and business ethics as part of its consideration of past

performance. It stated that it "was aware" of the Sigonella protest and that the Source Selection Authority had "reviewed all information within the protest and the 2010 and 2015 deferred prosecution agreements." AR 1519.

### G. Protest Action in This Court

Algese filed its complaint in this Court on October 28, 2015. On October 30, 2015, the Court granted Louis Berger Aircraft Services' motion to intervene. The Government produced the administrative record on November 20, 2015 and supplemented it with certain portions of the administrative record from the parallel Navy procurement for Sigonella, Italy on December 8, 2015. The Navy voluntarily agreed to withhold any performance under the newly awarded contract until the Court decided this protest. The Court is not aware of any Navy decision on the Sigonella, Italy procurement as a result of its corrective action. Algese filed its motion for judgment on the administrative record on January 8, 2016. On January 22, 2016, the Government filed its cross-motion and response. The motions are fully briefed. The Court heard oral argument on February 12, 2016.

## II. Discussion

### A. Jurisdiction and Standing

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, this Court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

Determining whether a bid protester has standing to pursue a claim in this Court "is a threshold jurisdictional issue" that must be met in any protest. Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04 (1998)). To establish standing under the Tucker Act, an aggrieved protester must demonstrate that it is an "interested party" by showing that it is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (quoting 31 U.S.C. § 3551(2) (Supp. IV 1998)).

Neither the Government nor Intervenor Louis Berger Aircraft Services disputes that Algese has standing to pursue this action. Indeed, Algese has standing as it was an actual

offeror with a direct economic interest that would be affected by the award of or failure to award this contract. The Navy deemed Algese its second choice for award of the contract.

### B. Standard of Review

In a bid protest, this Court reviews an agency's decision under the standards in the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701-706 (2000); see, e.g., Impresa Construzioni Geom. Domenic Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (stating that the APA standard of review shall apply in all procurement protests in the Court of Federal Claims). Under the APA, a court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The APA standard allows this Court to cancel an agency's procurement decision if it lacked a rational basis or if the agency's decision-making involved a violation of regulation or procedure. Impresa, 238 F.3d at 1332. When evaluating a challenge on the first ground, a court "must determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (quoting Impresa, 238 F.3d at 1333 (Fed. Cir. 2001)). If the agency acted without a rational basis or contrary to law, the court must then determine whether "the bid protestor was prejudiced by that conduct." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The plaintiff must show prejudice by demonstrating "that there was a substantial chance it would have received the contract award but for [the agency's] error." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted).

### C. Louis Berger Aircraft Services' Material Misrepresentations

Material, intentional misrepresentations in a proposal disqualify an offeror from competing for the contract award. Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 233 (2006) (citing Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 468 (2001)). As material, intentional misrepresentations taint the award process, "prevent government officials from determining the best value to the government and retard the competitive bidding process," an offeror who is found to have made such a misrepresentation "will lose its right to execute the solicited work or bid on the reprocurement of the contract." Microdyne, 72 Fed. Cl. at 233 (2006).

A misrepresentation is material if the contracting officer relied on it in forming his opinion. See Acrow Corp. of Am. v. United States, 97 Fed. Cl. 161, 175 (2011) (citing Tucson Mobilephone, Inc. B-258408, 1995 WL 335101 (Comp. Gen. June 5, 1995) and

PPATHI, Inc., B-249182, 1993 WL 25128 (Comp. Gen. Jan. 26, 1993) ("The contracting official need only show that the impropriety 'might have affected the award decision.'")). The offeror must intend to make the statement. Northrup Grumman, 50 Fed. Cl. at 468. Proof of intent may come from circumstantial evidence. Planning Research Corp. v. United States, 971 F.2d 736, 742 (1992). Where, as here, a contracting officer relies on an offeror's misstatement, the award is arbitrary and capricious. See Acrow, 97 Fed. Cl. at 175-76 (2011).

1. Former Chairperson Derish Wolff's 2014 Plea Agreement

Louis Berger Aircraft Services certified under FAR 52.209-7 that neither it nor "any of its principals . . . within five years, in connection with the award to or performance by the offeror of a Federal contract or grant, have been the subject of a proceeding . . . that resulted in . . . a conviction." AR 419. This statement was false.

Derish Wolff, the former chairperson of Louis Berger Aircraft Services' parent corporation, had been indicted for and pleaded guilty to defrauding USAID within five years of Louis Berger Aircraft Service's proposal. Mr. Wolff pleaded guilty in December 2014, four months before Louis Berger Aircraft Services submitted its proposal. AR 1432. The Government and Intervenor assert that Louis Berger Aircraft Services had no duty to disclose Mr. Wolff's guilty plea because he was not a principal within the meaning of FAR 52.209-7 at the time of his plea agreement. Mr. Wolff retired in August 2010 after Louis Berger Group admitted to fraudulently overcharging USAID and agreed to fire executives involved in the misconduct. This argument belies the factual record and the purposes of the disclosure requirements.

At the time of his plea, Mr. Wolff owned 25 percent of Berger Group Holdings, the parent corporation which wholly owns Louis Berger Aircraft Services. Retired or not, owning a quarter of the parent corporation, Mr. Wolff was an owner and thus a principal in 2014. These facts triggered Louis Berger Aircraft Services' reporting obligations. Setting aside his ownership interest in the parent corporation, Mr. Wolff pleaded guilty to fraud in connection with his activities as chairperson of Berger Group Holdings. Undoubtedly, he was a principal when he committed the misconduct. If the Court were to accept the Government's argument, offerors seeking to avoid certification requirements could simply extricate any employees, or in this case, chairpersons, engaging in misconduct before submitting a proposal. Allowing this type of loophole in the certification process would significantly undermine the government's anti-corruption regime and reduce confidence in the competitive procurement process. See Planning Research Corp. v. United States, 971 F.2d 736, 741 (Fed. Cir. 1992).

At a minimum, the Contracting Officer ignored contradictory information which should have put him on notice of Louis Berger Aircraft Services' misstatement in its certifications. Planning Research Corp., 971 F.2d at 739. This failure rendered his determination arbitrary and capricious. Louis Berger Aircraft Services represented that Mr. Wolff was "separated" from the company in August 2010 and his shares were "redeemed and converted to non-voting trust certificates to be redeemed in November 2015." AR 1414-15. However, the Department of Justice's indictment plainly stated that Mr. Wolff owned a quarter of the stock in Berger Group Holdings at the time of his plea agreement. Perplexingly, the Contracting Officer noted that Mr. Wolff was "formally separated" from Louis Berger Group in August 2010 but failed to discuss his 25 percent ownership. AR 1119. More problematically, the Contracting Officer's failure to recognize Mr. Wolff's ownership interest meant that he also neglected to assess whether Mr. Wolff was a "principal" at the time of his plea agreement. The Contracting Officer arbitrarily relied on Louis Berger Aircraft Services' certification under FAR 52.209-7 despite contradictory information in the record. See Acrow, 97 Fed. Cl. 161, 175-76 (2011).

        2. Parent Company Berger Group Holdings' 2015 Deferred Prosecution Agreement

Under FAR 52.209-5, Louis Berger Aircraft Services certified that neither it nor its principals were "presently indicted for, or otherwise criminally or civilly charged by a governmental entity with commission of" fraud or other specified bribery and public integrity offenses. AR 429. However, Louis Berger Aircraft Services' parent corporation Berger Group Holdings was, and is currently, a party to a deferred prosecution agreement. Berger Group Holdings entered into the deferred prosecution agreement in July 2015, in the midst of the procurement at issue here. Berger Group Holdings was not a named defendant, and therefore, not "indicted" under FAR 52.209-5. However, Berger Group Holdings was explicitly accused of engaging in a conspiracy to bribe foreign officials. See, e.g., AR 1372-73 ("Company [defined to include Berger Group Holdings, subsidiaries and affiliates] engaged in a scheme to pay bribes to various foreign officials. . . .").

The Court must determine if Berger Group Holdings was "otherwise criminally . . . charged," triggering disclosure requirements on Louis Berger Aircraft Services' part. FAR 52.209-5. The FAR does not define "charge". The Government and Algese offer different definitions: one grounded in a dictionary definition and the other in the regulatory scheme governing suspension and debarment. Under either definition, Berger Group Holdings was "charged" for the purposes of FAR 52.209-5 requiring disclosure.

For its part, the Government relies on Black's Law Dictionary's definition, a "formal accusation of a crime as a preliminary step in prosecution," to argue that Berger

Group Holdings was not charged. Def. Mem. at 21 (quoting Black's Law Dictionary (9th ed. 1999)). However, under this definition Berger Group Holdings was in fact charged. The Department of Justice formally accused Berger Group Holdings of engaging in a long-term scheme to bribe foreign officials to win public contracts. Berger Group Holdings agreed to the accuracy of the allegations and agreed not to contest them. AR 1347. The corporation acknowledged that it may be subject to criminal prosecution based on the allegations in the deferred prosecution agreement. Id.

Turning to Algese's definition, as the "regulations concerning responsibility determinations are cryptic," this Court "may look to the more extensive debarment regulations for guidance, at least on questions related to the 'integrity and business ethics' requirement." Impresa, 238 F.3d at 1335 (citing Steptoe & Johnson, Comp. Gen. Dec. B-166118, 1969 WL 4287, at *5 (Mar. 28, 1969); Secretary of the Army, 39 Comp. Gen. 868, 872, 1960 WL 1741 (1960)); see also NEIE, Inc. v. United States, No. 13-164, 2013 WL 6406992, at *19 (Fed. Cl. Nov. 26, 2013) ("In reviewing a responsibility determination based on the 'integrity and business ethics' requirement, the court may look to the more extensive debarment regulations for guidance[.]" (quoting another source, internal quotation marks omitted).) Indeed, the regulators who drafted FAR 52.209-5 noted that the certification requirement was "consistent with guidelines recently promulgated by [the U.S. Office of Management & Budget] for agency use in nonprocurement actions [for suspension and debarment]. . . ." 52 Fed. Reg. 28642 (July 31, 1987) (citing 52 Fed. Reg. 20360 (May 29, 1987) (describing Guidelines of Nonprocurement Debarment and Suspension)). The Office of Management & Budget guidelines instruct that suspension may be appropriately based "on an indictment, conviction, or other adequate evidence that the respondent has committed irregularities seriously reflecting on the propriety of further Federal Government dealings with the respondent." Id. at 20368. As FAR 52.209-5(a)(1)(B) already requires disclosure of an indictment and thus a conviction, the Court adopts the latter definition. See FAR 52.209-5(a)(1)(B) (requiring disclosure if the offeror or its principal has "been convicted of or had a civil judgment rendered against them" in the past three years). The Court is satisfied that the irregularities-seriously-reflecting-on-propriety standard is not unduly burdensome and is properly applied to disclosure requirements.

Berger Group Holdings' conduct presented adequate evidence of irregularities seriously reflecting on the propriety of further Federal Government dealings. Louis Berger Aircraft Services' parent corporation was accused of, and admitted to, engaging in a twelve-year conspiracy to "pay bribes to various foreign officials in Indonesia, Vietnam, India and Kuwait to secure contracts with government agencies and instrumentalities. . . ." AR 1372-73. Although not named in the criminal case, Berger Group Holdings was very much a part of the activities upon which the criminal conviction was based. When

13

assessing a prospective contractor's record for integrity and business ethics under FAR Part 9, the contracting officer is considering the reputational and performance risks the offeror may pose. Here, the offeror's principal participated in a decade-long international bribery scheme to obtain public contracts. Id. This is precisely the type of information that an offeror should put before the contracting officer so he can assess reputational risk posed to the government. See J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1201 (Fed. Cir. 1988) (finding a false certification after attributing a parent corporation's conviction to the wholly-owned subsidiary). Under both definitions, Berger Group Holdings was otherwise criminally charged. Having determined that Louis Berger Aircraft Services' certification to the contrary was a false statement, the Court now considers whether Berger Group Holdings was Louis Berger Aircraft Services' principal.

Quoting Louis Berger Aircraft Services, the Contracting Officer found that Berger Group Holdings does not "exert operational or managerial" control over Louis Berger Aircraft Services or its direct parent, Louis Berger Services. AR 1117. He observed that Berger Group Holdings was not a "principal" and thus Louis Berger Aircraft Services did not have to disclose the deferred prosecution agreement. Id. This conclusion both disregards the full definition of "principal" and ignores contradictory information in the administrative record.

As with Berger Group Holdings, a "principal" can be an owner, not only a person having "primary management or supervisory responsibilities" as the Contracting Officer suggested. FAR 52.209-5(a)(2). Despite discussing the Louis Berger family of companies' corporate structure, the Contracting Officer failed to realize that Berger Group Holdings owns 100 percent of Louis Berger Aircraft Services. He noted that Louis Berger Services is Louis Berger Aircraft Services' direct parent corporation. AR 1117. Berger Group Holdings is Louis Berger Services' direct parent corporation. Louis Berger Services owns 83 percent of Louis Berger Aircraft Services and Berger Group Holdings owns the remaining 17 percent. Id. In fact, Berger Group Holdings owns 100 percent of Louis Berger Services. Thus, Berger Group Holdings wholly owns Louis Berger Aircraft Services. This makes Berger Group Holdings a "principal" of Louis Berger Aircraft Services prompting the certification requirements. The Contracting Officer bypassed this fact adopting wholesale, and without explanation, Louis Berger Aircraft Services' false statement. This fact alone made the Contracting Officer's determination arbitrary and capricious.

Louis Berger Aircraft Services' false statement that it does not control its subsidiaries was both self-serving and obvious. At a minimum, the Contracting Officer ignored evidence of the misrepresentation. Planning Research, 971 F.2d at 739 (upholding a finding of a material misstatement and decision to terminate the contract award). To be

sure, there was clear evidence in the record that Berger Group Holdings held "supervisory responsibilities" over its subsidiaries, including Louis Berger Aircraft Services. FAR 52.209-5(a)(2). For example, despite not being indicted in either investigation, Berger Group Holdings "fully cooperated with Government investigations and took substantial remedial measures to address both the violations [in the 2010 and 2015 deferred prosecution agreements] as well as the misconduct related to over-allocating overhead charges to USAID." AR 1118. As part of these efforts, Berger Group Holdings set up an independent compliance monitor for all Berger Group companies, and "terminated employees responsible for the misconduct." AR 1118-19. Berger Group Holdings terminated its subsidiary's chief executive officer, chief financial officer, and two senior vice presidents. AR 1118-19. By establishing and monitoring company-wide compliance efforts and controlling the staffing of its subsidiaries, Berger Group Holdings assumed supervisory responsibilities for its subsidiaries. In the corporate law context, courts have found the very conduct at issue here sufficient to determine the parent corporation exercised control over its subsidiary. See, e.g., Richard v. Bell Atl. Corp., 946 F. Supp. 54, 62 (D.D.C. 1996) (explaining where a parent controls hiring and firing of subsidiary employees, the parent exercises control over the subsidiary) (collecting cases).

The final problem plaguing the Contracting Officer's conclusion is that it is internally inconsistent. The Contracting Officer concluded that "[Berger Group Holdings] does not assert any direct operational, managerial or supervisory role over any of the first-tier subsidiaries." AR 1117. He concluded also that Louis Berger Services "operates independently from BGH [Berger Group Holdings]. . . ." AR 1119 (Responsibility determination). Yet, a mere one page later, the Contracting Officer concluded "LBS [Louis Berger Services] . . . and BGH [Berger Group Holdings] are affiliates of one another as *BGH wholly owns and legally controls all entities*." AR 1120 (emphasis added).

The Court fails to understand how Berger Group Holdings can "wholly own[] and legally control[] all entities" but not exert power over them so that each is a "standalone business." Compare AR 1120 with AR 1119. The Contracting Officer failed to justify or explain this patently inconsistent finding.

       3. <u>Louis Berger Aircraft Services Misrepresented the 2015 Deferred Prosecution Agreement.</u>

Quoting Louis Berger Aircraft Services, the Contracting Officer asserted, "Berger Group Holdings was not, and has not been, investigated, accused, or charged with any misconduct by the government, and is not otherwise subject to the DPA [deferred prosecution agreement]." AR 1413. Thus, he concluded that Louis Berger Aircraft Services was not required to disclose the 2015 deferred prosecution agreement because

15

Berger Group Holdings is merely a guarantor. AR 1117. Contrary to the factual record, this conclusion lacks a rational basis and cannot stand. Cf. Bender Shipbuilding & Repair, Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) ("When [responsibility determinations] have a rational basis and are supported by the record, they will be upheld.").

In fact, Berger Group Holdings was subject to an extensive government investigation, as described in the 2015 deferred prosecution agreement. AR 1346-1407. The Contracting Officer concluded that Berger Group Holdings had not been accused of misconduct. This statement also is untrue. The deferred prosecution agreement and criminal complaint expressly included Berger Group Holdings as one of the parties engaging in a decade-long conspiracy "to make and conceal corrupt payments to foreign officials in India, Kuwait, Vietnam and elsewhere. . . ." Compl. at 2, 4, United States v. Louis Berger Int'l, Inc., Mag. No. 15-3624 (MF) (D.N.J.).

*          *          *          *

The record before the Court leaves no doubt that Louis Berger Aircraft Services intended to make false statements in its proposal. This entity is part of a family of corporations that has intentionally hidden its history of public corruption scandals through misrepresentations, false certifications, and a scheme to avoid reporting requirements. As part of its scheme, the corporation created a new subsidiary in which to dump its criminal liability problems. In the 2015 deferred prosecution agreement, the only named defendant, Louis Berger International, had not been formed until two years after the end of the bribery at issue. This subsidiary was formed to assume "responsibility for all international operations and liabilities of [Berger Group Holdings and its subsidiaries]. . . ." AR 1372. Indeed, essentially none of the Louis Berger companies have disclosed the many criminal investigations, charges, and convictions in SAM or FAPIIS. The scheme was so effective that the Navy was not even aware of this history of public corruption until Algese brought its bid protest at the GAO in the Sigonella, Italy procurement.

The Court agrees with both the U.S. Assistant Attorney in charge of the 2015 deferred prosecution agreement and the Navy officer in charge of this procurement: Berger Group Holdings was "very careful not to be a named defendant and to avoid reporting requirements" for itself and its subsidiaries. AR 1507 (email from Scott E. Miller); accord Id. (reporting that the U.S. Assistant Attorney believed Berger Group Holdings did not want to be a defendant "to avoid any requirement that its numerous subsidiaries have to disclose the FCPA matter"). Louis Berger Aircraft Services' actions were not simply deficient or unknowing. They were willful and intentional. Cf. Northrop Grumman, 50

16

Fed. Cl. at 468-69 ("Without some proof that [awardee's] actions in preparing its proposal were sinister, not just deficient . . . , [Plaintiff's] claim that [awardee] wrongfully misrepresented its ability to perform the contract fails."). The protection of the integrity of the federal procurement process from the "fraudulent activities of unscrupulous government contractors" requires rejection of an award founded on material misstatements. K & R Eng'g v. United States, 616 F.2d 469, 476 (Ct. Cl. 1980).

Turning to prejudice, the Court is convinced that, if not for the Navy's arbitrary and capricious responsibility determination, there was a substantial chance Algese would have received the contract award. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted). Algese was the Navy's second rated offeror behind Louis Berger Aircraft Services. Proper consideration of Louis Berger Aircraft Service's history, false statements, and false certifications should have resulted in a non-responsible determination, precluding award to Louis Berger Aircraft Services.

### III. Injunctive Relief

Having concluded that the instant procurement was legally flawed and that Algese was thereby prejudiced, the Court must determine whether Plaintiff has made three additional showings to warrant injunctive relief. Algese must show that: (1) it will suffer immediate and irreparable harm; (2) the balance of hardships on all parties favors the Plaintiff; and (3) the public interest would be better served by granting the relief requested. Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 568 (2012) (collecting cases). No one factor is dispositive as the "weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Circ. 1993). Here, the existence of irreparable injury to Algese, the balancing of harms in favor of Algese, and the public interest, all lead the Court to grant injunctive relief to Algese.

#### A. Irreparable Harm

When assessing irreparable harm, the relevant inquiry is whether plaintiff has an adequate remedy in the absence of an injunction. Serco Inc. v. United States, 81 Fed. Cl. 463, 501 (2008). Plaintiff asserts that, if not for the erroneous and unfair procurement, the Navy would have awarded the contract to Algese, the next-in-line offeror. Courts have recognized that loss derived from a lost opportunity to compete on a level playing field for a contract is sufficient to prove irreparable harm. See, e.g., Impresa, 52 Fed. Cl. at 828; Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004) (collecting cases). Irreparable harm is particularly strong where a competing offeror has secured the contract

to the detriment of Plaintiff through willful material misrepresentations and false certifications. Accordingly, Algese has demonstrated irreparable harm.

### B. Balancing of Harm to Others

Here, the Court weighs the hardships Plaintiff would suffer absent an injunction against the harm such an injunction would inflict on the Government. Sheridan Corp. v. United States, 94 Fed. Cl. 663, 670 (2010). The Government suggests that enjoining the performance of the contract would delay services necessary to the Navy's business in Rota, Spain. However, this Court has observed that "'only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests.'" PGBA, LLC v. United States, 57 Fed. Cl. 655, 663 (2003) (quoting Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 399 (1999)). The Government has offered no reason why this is such an exceptional case. Further mitigating harm to the Government, the current incumbent Louis Berger Aircraft Services has been and can continue to perform the services under the former contract until a new awardee is in place. The Court does not see any harm to the Government from having to properly evaluate proposals and award a contract in accordance with law. The Navy presumably can perform these tasks promptly.

### C. Public Interest

The public has a strong and overriding interest in maintaining the integrity of the procurement process. Sys. Appl'n & Techs., Inc. v. United States, 100 Fed. Cl. 687, 721 (2011). Generally, "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." PGBA, 57 Fed. Cl. at 663. This concern is heightened when, as here, an offeror has misrepresented its history of corruption to secure a contract. Allowing a contract award to move forward after the considerable flaws in this procurement would "provoke suspicion and mistrust and reduce confidence in the competitive procurement system." Planning Research, 971 F.2d at 741 (Fed. Cir. 1992). The public interest in the integrity of the procurement process strongly weighs in favor of granting injunctive relief.

## IV. Conclusion

Algese requested that the Court remand this case to the Navy for further consideration of its responsibility determination. The Court declines to do so. Injunctive relief is the proper remedy here. An offeror who is found to have made an intentional, material misrepresentation has so tainted the award process to have "los[t] its right to


execute the solicited work or bid on the reprocurement of the contract." <u>Microdyne</u>, 72 Fed. Cl. at 233 (Fed. Cl. 2006).  To preserve the integrity of the competitive process, the Court sets aside the Navy's award to Louis Berger Aircraft Services and enjoins its performance under this Solicitation.  The terms of the injunction are as follows:

> The Department of the Navy, through its officers, employees, and agents, and all others working in concert with them, shall forthwith terminate the unlawfully awarded contract to Louis Berger Aircraft Services under the Solicitation at issue, and shall cease any and all further performance under this contract.

The Clerk of Court shall enter judgment in favor of Plaintiff Algese.

IT IS SO ORDERED.

<u>s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge