# In the United States Court of Federal Claims

No. 15-1279C

(Filed Under Seal:  July 21, 2016)

(Reissued for Publication:  July 29, 2016)

| | |
|---|---|
| ************************************** * <br> * <br> ALGESE 2 s.c.a.r.l., * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br> Defendant, * <br> * <br> and * <br> * <br> LOUIS BERGER AIRCRAFT SERVICES, * <br> INC., * <br> * <br> Defendant-Intervenor. * <br> * <br> ************************************** * | Post-award Bid Protest; Remand to Agency for Responsibility Determination Following Receipt of New Information; Offeror's Duty to Disclose Criminal Activity of Parent Corporation and Former Principals. |

*Kristen E. Ittig*, with whom were *Christopher R. Yukins* and *Lauren J. Schlanger*, Arnold & Porter LLP, Washington, D.C., for Plaintiff.

*Daniel S. Herzfeld*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Scott E. Miller* and *Eva Escalante*, Counsel, Naval Supply Systems Command, Department of the Navy, for Defendant.

*David M. Nadler*, with whom were *Adam Proujansky, David Y. Yang,* and *Philip E. Beshara,* Blank Rome LLP, Washington, D.C., for Defendant-Intervenor.

## OPINION AND ORDER[1]

WHEELER, Judge.

This bid protest is before the Court again following a remand in which the Court invited the Navy to conduct a new responsibility determination of the proposed awardee, Louis Berger Aircraft Services. More than four months ago, the Court had permanently enjoined the Navy from proceeding with its proposed Louis Berger contract due to multiple failures to disclose rampant criminal conduct by parent company officers and principals. Based upon new information, the Navy disagreed with the Court's decision, asserting that it had reasonable explanations for each of the violations identified by the Court. The Navy has now submitted three volumes of new information demonstrating a much more thorough review, and it requests the Court to lift the permanent injunction so that it may proceed with the contract award to Louis Berger Aircraft Services.

### Background[2]

On March 4, 2016, the Court issued an opinion and order setting aside the Navy's October 7, 2015 award to Louis Berger Aircraft Services for air terminal and ground handling services at Naval Station Rota, Spain. Algese 2 s.c.a.r.l.v. United States, 125 Fed. Cl. 431 (2016). In its opinion, the Court permanently enjoined contract performance based on Louis Berger Aircraft Services' intentional and material misrepresentations to the Contracting Officer. Louis Berger Aircraft Services made false certifications under FAR 52.209-5 and FAR 52.209-7 regarding criminal proceedings against the family of Louis Berger companies and its executives for bribery and fraud. As a result, the Navy's reliance on Louis Berger Aircraft Services' representations rendered its responsibility determination arbitrary and capricious.

On March 28, 2016, the Government filed a motion for reconsideration of the Court's opinion and order or, alternatively, a stay of judgment pending appeal. The Government based its request on new information not included in the Administrative

[1] The Court issued this decision under seal on July 21, 2016 and invited the parties to submit proposed redactions of any competitive-sensitive, proprietary, confidential, or other protected information on or before July 28, 2016. By that date, none of the parties proposed redactions. Thus, the Court reissues the opinion in its entirety for publication.

[2] The facts in this decision are taken from the administrative record, as supplemented. The pages in the administrative record are numbered in sequence, and the documents are divided by tabs. The Court's citations to the administrative record generally are to the page numbers. A few citations are to other sources, of which the Court takes judicial notice.

Record.  Based on the new information and after a hearing on March 29, 2016, the Court vacated its judgment and remanded the case to the Navy for 45 days to permit the Navy to make an updated responsibility determination and to consider issuing a new business clearance memorandum in light of the Court's March 4, 2015 opinion and order.  The Court kept the permanent injunction in place.  In remanding to the Navy for further consideration, the Court left open the possibility that the Navy, after considering the newly presented evidence, would disagree with the Court's conclusions.  In this circumstance, the Court instructed the Navy that it would have to explain why it came to a different conclusion from the Court.

On June 1, 2016, the Government filed a status report informing the Court that the Navy had updated its responsibility determination, and assessed the Court's legal and factual determinations based upon 2,500 pages of new information included in the remand Administrative Record.  Administrative Record ("AR") 1752-80.  The Navy concluded that Louis Berger Aircraft Services is a responsible offeror and should be awarded the contract.  As discussed below, the Navy weighed and considered each of the Court's principal reasons for finding that Louis Berger Aircraft Services had made material misrepresentations.  Now, the sole question before the Court is whether the Navy's determinations in its updated responsibility determination are arbitrary and capricious, or lack a rational basis.  Even though the Court may not have reached the same conclusion as the Navy, the Court cannot say that the Navy's determinations are unreasonable or unlawful.

<div style="text-align:center">Discussion</div>

In a bid protest, this Court reviews an agency's decision under the standards in the Administrative Procedure Act ("APA").  5 U.S.C. §§ 701-706 (2000); see, e.g., Impresa Construzioni Geom. Domenic Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (stating that the APA standard of review shall apply in all procurement protests in the Court of Federal Claims).  Under the APA, a court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The APA standard allows this Court to cancel an agency's procurement decision if it lacked a rational basis or if the agency's decision-making involved a violation of regulation or procedure.  Impresa, 238 F.3d at 1332.  The arbitrary and capricious standard is "highly deferential" and the "protestor bears the burden of proving that a significant error marred the procurement in question."  Glenn Defense Marine (Asia), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citations and internal quotation marks omitted). Under this standard, "the agency's action must be upheld as long as a rational basis is

articulated and relevant factors are considered." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (citations omitted).

A protestor faces a "high hurdle" in challenging a responsibility determination. Supreme Foodservice GmbH v. United States, 112 Fed. Cl. 402, 415 (2013). Responsibility determinations are "largely a matter of judgment, and contracting officers are normally entitled to considerable discretion and deference in such matters." Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) (citation and internal quotation marks omitted). When such decisions have a rational basis and are supported by the record, the Court will uphold the decision. Id. at 1362 (citation omitted). Even if the Court disagrees with the agency's responsibility determination, it may not "substitute its judgment for that of the agency." Watts-Healy Tibbitts A JV v. United States, 84 Fed. Cl. 253, 258 (2008) (citations and internal quotation marks omitted).

<center>*   *   *   *</center>

In its March 4, 2016 opinion and order, the Court provided a detail factual history supporting its conclusion that Louis Berger Aircraft Services had made material misstatements. Algese, 125 Fed. Cl. at 434-39. To aid the reader, the Court reproduces a brief introduction to the awardee's corporate structure. Louis Berger Aircraft Services, is part of a family of companies controlled by Berger Group Holdings, Inc. The Louis Berger family of corporations is described graphically below.[3]



As guided by the Court's previous opinion and order, the Contracting Officer's inquiry on remand focused primarily on the awardee, Louis Berger Aircraft Services, and its parent corporation, Berger Group Holdings.

---

[3] The chart does not include all Louis Berger companies, merely those at issue in this protest.

A. <u>Former Chairperson Derish Wolff's 2014 Plea Agreement</u>

In its previous opinion and order, the Court concluded that Louis Berger Aircraft Services falsely certified that neither it nor "any of its principals . . . within five years, in connection with the award to or performance by the offeror of a Federal contract or grant, have been the subject of a proceeding . . . that resulted in . . . a conviction." AR 419. Derish Wolff, the former chairperson of Louis Berger Aircraft Services' parent corporation, had been indicted for and pleaded guilty to defrauding the U.S. Agency for International Development within five years of Louis Berger Aircraft Service's proposal. AR 1432. Relying on language in the Department of Justice indictment, the Court concluded that Mr. Wolff was a "principal" as he owned 25 percent of Louis Berger Aircraft Services' parent corporation at the time of his guilty plea. Louis Berger Aircraft Services asserted that the company had converted Mr. Wolff's stock to non-voting trust certificates before his guilty plea, extinguishing Mr. Wolff's ownership interest.

On remand, the Navy fully developed the record on this issue. The Navy considered whether: (1) Derish Wolff was a principal under FAR 52.209-7; and (2) his criminal conviction was in connection with the award to or performance by Louis Berger Aircraft Services of a Federal contract or grant under FAR 52.209-7. AR 1765. The Navy answered both of these questions negatively and concluded that Louis Berger Aircraft Services did not provide false certifications.

1. <u>Mr. Wolff's Status as a "Principal" Under FAR 52.209-7</u>

The Navy determined that Mr. Wolff had no stock ownership after 2010, five years before his guilty plea, in Berger Group Holdings, the parent corporation of Louis Berger Aircraft Services. Mr. Wolff's 2010 separation agreement required him to sell half of his shares to Berger Group Holdings and exchange the remaining shares for non-voting trust certificates within 30 days of executing the agreement. AR 1764; AR 3759 (Separation Agreement). On September 20, 2010, Mr. Wolff and Berger Group Holdings executed a promissory note selling half of his shares to the company. AR 3765-70 (Promissory Note). On September 28, 2010, Mr. Wolff and Berger Group Holdings entered an agreement exchanging his remaining shares of voting stock for non-voting trust certificates. AR 1764; AR 3785-87 (Exchange Agreement).

Algese asserts that the Contracting Officer should have viewed any indicia of ownership conferred by the non-voting trust certificates as sufficient to make Mr. Wolff an owner, and thus, a principal under FAR 52.209-7. In essence, Algese argues that actual stock ownership is not necessary for the Contracting Officer to conclude Mr. Wolff was an

5

owner: non-voting trust certificates are sufficient to require Louis Berger Aircraft Services to disclose Mr. Wolff's 2015 plea agreement. The Contracting Officer disagreed.

Based on this new evidence, the Navy concluded that the promissory note and non-voting trust certificates did not give Mr. Wolff an ownership interest in Louis Berger Aircraft Services' parent company. AR 1766; see AR 3778-84. Regarding the trust certificates, the Navy concluded that while they convey "'indicia of ownership,' the trust certificates do not confer ownership . . . as it is a debt or financial instrument and a trustee controls the rights associated with the trust certificate." Id. As shown in the trust agreement, only the trustee can vote the shares of the trust, not Mr. Wolff. AR 4024-25; AR 2836. While the trustee has voting rights, his vote does not allow him to affect the outcome of a vote. See id. (explaining that the shares must be voted in proportion with the votes of the remaining shareholders, to ensure that the trustee's vote has no impact on the outcome of any matter being voted upon). Although, Mr. Wolff maintained a passive financial interest in Berger Group Holdings through the trust certificates, he had no ability to control or influence the Louis Berger family of companies either directly or indirectly.

Further, the trust "is intended to dissociate ownership of the economic interest in the shares . . . from any of the elements of control or influence ordinarily associated with actual record ownership." AR 4024. Thus, under the terms of the trust and shareholders' agreements, Mr. Wolff retained no title in any company shares and by transferring ownership of his shares to a trust, his remaining financial interest was severed from any ownership rights. He had no remaining contingent interest as the trust agreement would never permit him to own stock. AR 3778 (shareholders' agreement explaining that only active employees may own stock); AR 3785 (Mr. Wolff "hereby transfers, assigns and delivers all of his right, title and interest in the Deposited Shares free and clear"). Even assuming that incidental benefits of ownership are sufficient to make Mr. Wolff a principal, he redeemed all of his trust certificates prior to his guilty plea. AR 1765, n.5. Therefore, it was reasonable for the Contracting Officer to conclude that the trust certificates do not confer ownership and that Mr. Wolff is not an owner.

Algese mounts a similar argument under FAR 52.209-5(a) which requires an offeror to certify whether it or its principals have within a three-year period preceding the offer, been convicted of or had a civil judgment rendered against the offeror or its principals. FAR 52.209-5(a)(1)(i)(B). According to Algese, the Contracting Officer's conclusion that Louis Berger Aircraft Services was not required to make an affirmative certification due to Mr. Wolff's conviction was unreasonable. This argument too fails. As with the last, this FAR provision requires disclosure if a principal has been convicted. As the Contracting Officer determined, Mr. Wolff was not a principal at the time of his conviction. Even assuming Mr. Wolff was a principal at the time of the guilty plea, Louis Berger Aircraft

Services updated its certification to be consistent with the Court's view that Mr. Wolff was a principal at the time of his conviction. Algese does not contest that Louis Berger Aircraft Services updated its certification. Nor does Algese dispute that the Contracting Officer considered the impact of Mr. Wolff's misconduct and conviction on Louis Berger Aircraft Services' present responsibility. The Contracting Officer has broad discretion in these procurement matters. CACI Field Servs., Inc. v. United States, 13 Cl. Ct. 718, 725 (1987) aff'd, 854 F.2d 464 (Fed. Cir. 1988). Here, he exercised his broad discretion to recommend an award to Louis Berger Aircraft Services after reviewing the relevant information.

2. Mr. Wolff's Former "Principal" Status Under FAR 52.209-7

Alternatively, Algese argues that, even if Mr. Wolff was not a principal at the time of his plea agreement, the Navy's responsibility determination must be rejected because Mr. Wolff was a principal when he committed the misconduct. Its argument continues that this former principal status requires an affirmative certification under FAR 52.209-7(c)(1)(i). Assuming, without deciding, that Algese's former principal theory is correct, the Contracting Officer's determination that Louis Berger Aircraft Services was not required to disclose Mr. Wolff's guilty plea was not irrational. Relying on the plain language of the FAR provision, the Contracting Officer reasoned that Louis Berger Aircraft Services was not required to make an affirmative certification because the provision applies to proceedings that were "in connection with the award to or performance by the *offeror* of a Federal contract or grant." FAR 52.209-7(c)(1) (emphasis added); AR 1767. Mr. Wolff's conviction was not in connection with any contract or grant either performed by or awarded to Louis Berger Aircraft Services. Rather, his conduct was associated with Berger Group Holdings.

Admittedly, FAR 52.209-7 does not expressly require offerors to disclose information about former principals. Assuming that the clause could be construed as ambiguous, the Contracting Officer's interpretation of an ambiguous clause is entitled to deference so long as it is reasonable. See Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002). Indeed, it is reasonable here. The Contracting Officer decided that the provision does not require disclosure of former principal's actions. All of Mr. Wolff's criminal activity took place between 1991 and 2010, before Louis Berger Aircraft Services was part of the Louis Berger family of companies. AR 1767. It is not unreasonable to conclude that an offeror is not required to disclose the misconduct of its parent corporation's former executive that occurred two years before the offeror existed. As the Contracting Officer determined, Louis Berger Aircraft Services was "not and could not have been a party to the criminal conduct that preceded its purchase by Berger Group Holdings." Id. The Contracting Officer considered the Court's factual findings set forth in its March 2015 opinion and order, Algese's allegations, and over 2,500

7

pages of information detailing the Louis Berger family of companies' conduct and resulting remedial measures. Louis Berger Aircraft Services disclosed and the Contracting Officer considered all facts relevant to Mr. Wolff's misconduct. The Court's review is narrowly circumscribed, and the Contracting Officer's decision was not arbitrary or unlawful. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

### B. Berger Group Holdings and the 2015 Deferred Prosecution Agreement

Addressing another of the Court's primary concerns, the Navy considered whether Berger Group Holdings was "otherwise criminally charged" in connection with a 2015 deferred prosecution agreement against Louis Berger Aircraft Services' sister corporation Louis Berger International. Previously the Court concluded that Berger Group Holdings was "otherwise criminally charged" under FAR 52.209-5 for two reasons: (1) the Department of Justice formally accused Berger Group Holdings of engaging in a long-term scheme to bribe foreign officials to win public contracts; and (2) the company's conduct presented adequate evidence of irregularities seriously reflecting on the propriety of further Federal Government dealings. In the briefs leading to the Court's March 2016 opinion, the parties contested the scope of the 2015 deferred prosecution agreement. The disagreement arose from the agreement's definition of "company." The deferred prosecution agreement defined "company" to include Berger Group Holdings. Then, it detailed the alleged misconduct perpetrated by the "company." See, e.g., AR 1372-73. After analyzing new evidence not previously before the Court, the Contracting Officer concluded that Berger Group Holdings was not included in the definition of "company" and therefore Berger Group Holdings was not otherwise criminally charged under either definition.

In a new declaration, one of the Assistant U.S. Attorneys who oversaw the drafting of the criminal complaint and deferred prosecution agreement stated that Berger Group Holdings was not included in the definition of "company." In fact, the Department of Justice did not "accuse Berger Group Holdings of any . . . crimes." AR 1821-22. Also, the prosecutorial team evaluated Berger Group Holding's reorganization of its subsidiaries that led to creation of the Louis Berger International. Contrary to the Court's finding, the team concluded that Berger Group Holdings did not create Louis Berger International as a shell company in which to dump its criminal liabilities. AR 1821-22. The Department of Justice's Criminal Division confirmed the prosecutorial team's contentions. AR 3546.

Algese argues that the Assistant U.S. Attorney's explanation of the definition of "company" should be dismissed because other parts of the deferred prosecution agreement contradict it. Algese asserts that "company" encompasses more than just Louis Berger International because the deferred prosecution agreement mentions two Louis Berger Group executives' culpable acts. However, the Contracting Officer decided that the

executives' actions were properly attributable to Louis Berger International. Due to corporate restructuring, Louis Berger Group was collapsed into Louis Berger International. AR 1770; AR 3095, 3098. As the Department of Justice explained, it prosecuted Louis Berger International because it assumed all liability for the previous entity during the restructuring process. As previously explained, the Department of Justice did not intend to implicate Berger Group Holdings in its description of Louis Berger International's misconduct.

In vacating its prior judgment and remanding for further consideration, the Court expressly invited the Navy to reconsider the facts surrounding the 2015 deferred prosecution agreement. The Court instructed that if the Navy reached a different conclusion from that of the Court, the Navy must fully explain its basis for doing so. The Navy has complied with this instruction. While the Court may disagree if it were in the shoes of the Contracting Officer, it will not substitute its judgment for that of the Navy, recognizing that reasonable minds could reach differing conclusions. Watts-Healy Tibbitts, 84 Fed. Cl. at 258 (citing another source). Relying on new facts, the Contracting Officer considered relevant factors and articulated a rational basis for his conclusions that Berger Group Holdings was not formally charged and the parent corporation's conduct did not present irregularities seriously reflecting on the propriety of further Federal Government dealings. Thus, Louis Berger Aircraft Services may not have had an obligation to certify that it or one of its principals was "otherwise criminally charged." As a result, the Court must stay its hand and not disturb the Navy's determination. See, e.g., PricewaterhouseCoopers Public Sector, LLP v. United States, 126 Fed. Cl. 328, 350-51 (2016) (collecting cases).

Relatedly, the Contracting Officer's revised responsibility determination properly weighed Louis Berger Aircraft Services' misleading statement that Berger Group Holdings was not, and has not been, investigated, accused, or charged with any misconduct by the Government and is not subject to the 2015 deferred prosecution agreement. AR 1413. In its previous opinion, the Court concluded that this was a material misrepresentation. Algese, 125 Fed. Cl. at 443-44. Here too, the Contracting Officer carefully examined the facts surrounding the Court's determination. The Navy asked Louis Berger Aircraft Services to address the issue on remand, and the awardee did so in a March 31, 2016 letter. AR 1971-72. The Contracting Officer concluded that Louis Berger Aircraft's statement was "not viewed as misleading or a misrepresentation as the Navy already knew what the respective roles of the parties were in the 2015 [deferred prosecution agreement] from the prosecuting attorneys." AR 1772-73. While the Navy's explanation appears to address materiality instead of truthfulness, the Court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Colo. Interstate Gas Co. v. Fed. Power Comm'n, 324 U.S. 581, 595 (1945).

To the extent Algese asserts Louis Berger Aircraft Services made other material misstatements, the Navy contends, and the Court agrees, that the Navy was fully aware of all pertinent facts before proceeding with its award to Louis Berger Aircraft Services. See, e.g., AR 2558 (Navy's discussion of purported misrepresentations in awardee's System Award Management certifications). The Navy disagrees that the statements were inaccurate, let alone material to its responsibility determination. Relying on new facts, the Contracting Officer reviewed relevant information and articulated a rational basis for his conclusion that Louis Berger Aircraft Services did not make material misstatements. That rational review process is all that is required for the Court to sustain the Navy's conclusions. See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

    C. Past Performance Evaluation

On remand, the Navy reconvened its Past Performance Evaluation Board to evaluate the factual bases for the Court's and Algese's stated concerns with an award to Louis Berger Aircraft Services. After reviewing all available information, the Evaluation Board concluded that Louis Berger Aircraft Services is capable of successfully performing the Rota contract, and that any concerns for affiliated corporations' bad acts are irrelevant to the awardee's performance capabilities. Ultimately, the Evaluation Board awarded Louis Berger Aircraft Services a substantial confidence rating. AR 1754.

Regarding the integrity of Louis Berger Aircraft Services' affiliates, the Evaluation Board reviewed the Court's prior decision, Algese's April 15, 2016 letter to the Navy raising integrity concerns, and the awardee's responses to the Navy's requests for information. See generally AR, Tab 36, 43(1) (USAID Administrative Agreement), 43(2) (letter from the Army Suspension & Debarment Office), 43(4) (deferred prosecution agreement). After its review, the Evaluation Board concluded that the additional information did "not affect [its] confidence in [Louis Berger Aircraft Services'] ability to successfully perform the required effort at Naval Station Rota," the criterion by which the Board was to evaluate past performance. AR 1754. The historical conduct of other Louis Berger companies, according to the Evaluation Board, is not relevant to this contract. AR 1755. The Court must afford the Navy wide deference in reviewing its past performance evaluation. See, e.g., Glenn Defense Marine (Asia), PTE Ltd. v. United States, 105 Fed. Cl. 541, 564-65 (2012) (collecting cases). Where, as here, the Evaluation Board's past performance rating is reasonable and consistent with the stated evaluation criterion and applicable regulations, the Court will not disturb it. Todd Constr., L.P. v. United States, 88 Fed. Cl. 235, 247 (2009) (quoting another source).

<u>Conclusion</u>

Although the Court's inquiry into the facts supporting the Navy's decision is to be searching and careful, the ultimate standard of review is a narrow one. <u>Bowman Transp. Inc.</u>, 419 U.S. at 285. It is neither the task nor the desire of the Court to conduct the Navy's procurement process. Despite its reservations, the Court defers to the Government's assertion that the Navy's contract award is consistent with the goals of its anti-corruption program. As this case demonstrates, where the Court may disagree with the ultimate award determination, it will not substitute its judgment for that of the agency. <u>Watts-Healy Tibbitts</u>, 84 Fed. Cl. at 258 (citing another source). Thus, the Court hereby LIFTS the permanent injunction. The Clerk of Court shall enter judgment in favor of the Government. No costs.

This decision was filed under seal on July 21, 2016. The Court invited the parties to carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information and submit to the Court any proposed redactions on or before July 28, 2016. As the parties did not propose redactions, the Court reissues the opinion in its entirety for publication.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge