# In the United States Court of Federal Claims

No. 15-1279C

(Filed Under Seal: August 18, 2016)

(Reissued for Publication: August 26, 2016)

| | |
|---|---|
| ************************************** * | |
| ALGESE 2 s.c.a.r.l., * | |
| Plaintiff, * | |
| v. * | Motion for Stay Pending Appeal; Factors to be Considered; Analysis of Likelihood of Success on the Merits; Irreparable Harm; Balance of Harms to Government; Effect on Public Interest. |
| THE UNITED STATES, * | |
| Defendant, * | |
| and * | |
| LOUIS BERGER AIRCRAFT SERVICES, INC., * | |
| Defendant-Intervenor. * | |
| ************************************** * | |

*Kristen E. Ittig*, with whom were *Christopher R. Yukins* and *Lauren J. Schlanger*, Arnold & Porter LLP, Washington, D.C., for Plaintiff.

*Daniel S. Herzfeld*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Scott E. Miller* and *Eva Escalante*, Counsel, Naval Supply Systems Command, Department of the Navy, for Defendant.

*David M. Nadler*, with whom were *Adam Proujansky, David Y. Yang,* and *Philip E. Beshara,* Blank Rome LLP, Washington, D.C., for Defendant-Intervenor.

OPINION AND ORDER[1]

WHEELER, Judge.

Plaintiff, Algese 2 s.c.a.r.l. ("Algese"), requests a stay pending its appeal of this Court's July 21, 2016 judgment, in favor of the Government, lifting the permanent injunction and allowing the Government to proceed with the contract award to Defendant-Intervenor Louis Berger Aircraft Services. After considering the parties' positions, the Court determines that Algese is unlikely to succeed on the merits of its appeal. Additionally, both the Government and the public interest would be harmed by granting the stay pending appeal given the termination of the bridge contract between the Government and Louis Berger Aircraft Services. For these reasons, Plaintiff's motion to stay pending appeal is DENIED.

Background

Algese filed a post-award bid protest challenging the Navy's award of a contract for air terminal and ground handling services at Naval Station Rota, Spain to Louis Berger Aircraft Services on the basis that Louis Berger Aircraft Services materially misrepresented and concealed its parent corporation's public corruption and fraud. Algese 2 s.c.a.r.l. v. United States, 125 Fed. Cl. 431 (2016). On March 4, 2016, the Court found for Algese and set aside the Navy's award to Louis Berger Aircraft Services. Id. at 445. On March 28, 2016, the Government filed a motion for reconsideration of the Court's opinion and order. In response, the Court vacated its judgment and remanded the case to the Navy for further consideration. Algese 2 v. United States, --- Fed. Cl. ---, 2016 WL 4098754. After considering approximately 2,500 pages of new information, the Navy affirmed its award to Louis Berger Aircraft Services as consistent with the goals of the anti-corruption program. Id. at 3. The Court reviewed and deferred to the Navy's assertion and lifted the permanent injunction on July 21, 2016. Id. at 11.

Algese filed an appeal to the Court of Appeals for the Federal Circuit on August 1, 2016. In addition, on August 8, 2016, Algese filed a motion to stay judgment pending appeal with this Court. The parties have now fully briefed Plaintiff's motion to stay judgment pending appeal.

---

[1] The Court issued this decision under seal on August 18, 2016 and invited the parties to submit proposed redactions of any competitive-sensitive, proprietary, confidential, or other protected information on or before August 25, 2016. By that date, none of the parties proposed redactions. Thus, the Court reissues the opinion in its entirety for publication.

Discussion

Pursuant to RCFC Rule 62(c), the Court has the authority to grant an injunction pending an appeal. Pursuant to Rule 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore or grant an injunction on terms for bond or other terms that secure the opposing party's rights." The movant carries the burden of persuasion because an injunction is "'an extraordinary and drastic remedy.'" OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001) (internal quotation omitted).

In determining whether to grant an injunction, the Court must consider the following four factors: "(1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies." Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The four factors do not have equal weight and cannot be "reduced to a set of rigid rules." Id. at 512-13 (quoting Hilton, 481 U.S. at 776). Even if a movant cannot demonstrate a strong showing of possible success on the merits, a demonstration that there is a substantial case on the merits and that the "balance of hardships tips decidedly toward plaintiff" will suffice to grant the injunction. Akima Intra-Data, LLC v. United States, 120 Fed. Cl. 25, 28 (2015) (quoting Charlie's Girls, Inc. v. Revlon, Inc., 483 F.2d 953, 954 (2d Cir. 1973)). Thus, in order to be successful, a movant must show either that it has a "strong likelihood of success on appeal" or that it has a "substantial case on the merits" and that the other three factors weigh in movant's favor. Standard Havens Prods., 897 F.2d at 513 (quoting Hilton, 481 U.S. at 778). Here, Algese has shown neither a strong likelihood of success nor a substantial case on the merits. Moreover, the balance of harms and public interest weigh strongly in favor of the Government.

1. Likelihood of Success on the Merits

"[A]n issue of first impression weighs in favor of finding a 'substantial case on the merits,' though not decisively." Akima, 120 Fed. Cl. at 28 (citing Jacobson v. Lee, 1 F.3d 1251 (Fed. Cir. 1993)). On appeal, Algese makes three claims, all of which it asserts are matters of first impression. Accordingly, if Algese successfully demonstrates issues of first impression, and can show that the equitable factors weigh in its favor, then the stay should be granted.

First, Algese claims that whether the Court is "required" to defer to the agency determination on bidder responsibility is a question of first impression when that agency "ignored the Court's prior determinations of fact and law." Pl.'s Reply at 4. Algese claims the contracting officer's new findings upon remand "directly contradicted the factual and legal conclusions of the Court's decision of March 4, 2016." Id. at 5.

3

The appropriate legal standard for review of agency responsibility decisions is "considerable" and "wide" deference. Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002); Impressa Construzioni Geom. Domenico Garufi v. United States, 283 F.3d 1324, 1334-35 (Fed. Cir. 2001). Specifically, "[s]ection 706 of the APA provides, in relevant part, that a 'reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Historically, courts have found agency procurement processes arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Algese claims that the Court erred by deferring to the Navy's determinations upon remand because those determinations overruled the findings of the Court. Pl.'s Reply at 6. However, the Court did not blindly defer to the Navy's determination. It reviewed the determination in light of a newly informed administrative record and found the determination reasonable. The Court explicitly noted that the appropriate standard was one of rational review and applied that standard in this case approximately twenty times in light of that new information. See Algese 2, 2016 WL 4098754 at *3, *6-10. Moreover, the Navy clearly did not ignore the Court's opinion. The Court allowed for disagreement with its opinion, so long as the Navy explained why it came to a different conclusion. The Navy produced approximately 2,500 pages of new information supporting its responsibility decision. The extensive remand Administrative Record meets the burden of explanation placed upon the Navy by this Court. While Algese asserts that the Navy overruled the Court's findings, the Navy instead offered new factual information relevant to its determination. The ways in which courts have held agency procurement decisions arbitrary and capricious do not apply to this case. See Motor Vehicle Mfrs., 463 U.S. at 43. The Navy did not "entirely fail" to consider Louis Berger Aircraft Services' past record, offer an explanation that is inconsistent with the evidence before it, or render an implausible decision. Id.

Importantly, the Court vacated its judgment on March 29, 2016, when it remanded the case to the Navy. A vacated judgment has no preclusive force, and the decisions upon which the judgment was based can be reconsidered. Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991). One goal of the remand was to allow the Navy to consider whether new information supported a conclusion different from the Court's determination. The Court allowed for the Navy to disagree with its findings so long as the Navy explained how it reached a different conclusion. Given this, holding the Navy to all of the Court's prior determinations would make such a remand purposeless.

For all these reasons, Algese has not established a substantial case on the merits as to its first purported issue.

Second, Algese claims that the Court's deference to the Navy's determination violates administrative law because the Navy "ignored" Louis Berger Aircraft Services' past record of poor integrity. Pl.'s Reply at 8. The Government claims that the past record of poor integrity only implicated Louis Berger Aircraft Services' affiliates, which had no meaningful involvement in the contract, and not Louis Berger Aircraft Services. Def.'s Response at 11. According to Algese, Louis Berger as a whole suffered from broader "business ethics failures in the broader Louis Berger compliance system" that directly affect Louis Berger Aircraft Services. Pl.'s Reply at 8. The issue is whether the Government's determination that Louis Berger Aircraft Services did not have an adverse record amounts to ignoring Louis Berger Aircraft Services' record.

The past record of an affiliate of the bidder is only relevant to the award if the affiliate will have meaningful involvement with the contract. Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 722 (2010). An agency's determination of what is relevant in the record is owed deference by courts. Glenn Defense Marine (Asia), PTE Ltd. v. Unites States, 720 F.3d 901, 911 (Fed. Cir. 2013). The Navy considered Louis Berger Aircraft Services' past performance and found no adverse history of poor integrity. It further determined that the poor record of Louis Berger Aircraft Services' affiliates was not relevant to the responsibility decision because the affiliates would have no meaningful involvement with the contract. Def.'s Response at 11. The Government does not assert that Louis Berger has no integrity concerns, but that those integrity concerns do not preclude Louis Berger Aircraft Services from performing the contract. Algese suggests that finding a portion of the record irrelevant constitutes ignoring it, but it does not. In order to make this determination, the Navy had to consider the records of employees and determine whether they were relevant. This determination simply does not amount to ignoring the issue. Therefore, Algese has not established a substantial case on the merits as to its second purported issue.

Third, Algese claims that the Court erred in granting the Government's motion to dismiss Count III of the amended complaint. Algese asserts unfair and unequal procurement processes based upon a comparison of the government's discussions with Louis Berger Aircraft Services in the Sigonella procurement and with Algese in the Rota procurement. Pl.'s Reply at 10. During Sigonella, the Navy informed Louis Berger Aircraft Services that it would need to lower its price in order to succeed in its bid, but the Navy did not inform Algese of its need to lower its bid in the Rota procurement. On February 8, 2016, the Court granted the Government's motion to dismiss because considering the claim would have required the Court to review government action that was not before it and, thus, was not within its jurisdiction. Dkt. No. 58. Algese claims that it can demonstrate the Navy's unequal and unfair practice without reference to the Sigonella procurement. Pl.'s Mot. at 10. Algese also claims merely showing that the Navy's

behavior during the Sigonella procurement was abnormal is sufficient to sustain its claim. Pl.'s Reply at 10.

The Court agrees with the Defendant and Defendant-Intervenor that Algese has not demonstrated how such a claim of unequal treatment could be sustained without reference to the Sigonella procurement, which is the basis for the purportedly unfair treatment. Algese even includes a table comparing the language of the two procurement processes as evidence of the unequal treatment. In response, Algese claims that the only relevance of the Sigonella procurement process is to show that "it was not normal for the Navy's contracting officer to provide pricing information to one offeror that made it almost certain that the favored offeror would win. . . ." Pl.'s Reply at 10. This response also is unlikely to succeed. The FAR allows agencies to engage in discussions with offerors regarding price and does not require agencies to engage in similar discussions with all offerors. 48 C.F.R. § 15.306(d). There is no requirement of normality or uniformity in discussions with offerors. Algese has failed to show that it has a substantial case on the merits as to its third purported issue.

2. <u>Irreparable Harm</u>

Algese claims it will be irreparably harmed by the lost opportunity to compete on a level playing field for the contract. Pl.'s Reply at 12. Its sole evidence is that the Court already found irreparable harm due to the unfair procurement process in its March 4, 2016 decision. <u>Algese 2</u>, 125 Fed. Cl. at 445. However, the facts that led the Court to conclude that there had been an unfair procurement process were re-evaluated during the Navy remand and accounted for in this Court's July 21, 2016 opinion. The Court found the Navy's procurement process consistent with the goals of the anti-corruption program, so the loss of opportunity to compete on a level playing field is no longer relevant. <u>Algese 2</u>, 2016 WL 4098754 at *11. The loss of a contract is not enough without more to show irreparable harm or warrant a stay pending appeal. <u>Akima</u>, 120 Fed. Cl. at 28 (citing <u>CRAssociates, Inc. v. United States</u>, 103 Fed. Cl. 23, 26 (2012)). Thus, Algese has not demonstrated irreparable harm.

3. <u>Balance of Harms</u>

The Court must weigh the hardships a plaintiff would suffer absent an injunction against the harm such an injunction would inflict on the Government. <u>Sheridan Corp. v. United States</u>, 94 Fed. Cl. 663, 670 (2010). For a bid protest, the harm suffered by the Government needs to be exceptional to warrant a denial of injunctive relief. <u>PGBA, LLC. V. United States</u>, 57 Fed. Cl. 655, 663 (2003).

The Government argues that it would be significantly harmed by an injunction pending appeal because its bridge contract with Louis Berger Aircraft Services expired on July 31, 2016, and re-processing a new bridge contract would be very costly and threaten

6

the functioning of Naval Station Rota. Def.'s Response at 15. The bridge contract expired on July 31, 2016 and could have been renewed. However, relying upon the Court's July 21, 2016 judgment in its favor and the fact that the Navy could not have both a bridge contract and the protested contract in place at the same time, the Navy elected not to renew the bridge contract and initiated the contract in question to begin on August 1, 2016. Algese argues that the Government took advantage of the expiration date of the bridge contract to "silence the whistleblower" and should have elected to renew the bridge contract. Pl.'s Reply at 11.

This Court previously found that the Government had not shown that it would suffer exceptional harm by an injunction due to the presence of a bridge contract to maintain continuous services at Rota. Algese 2, 125 Fed. Cl. at 445. However, that fact has now changed. There is no currently existing bridge contract to maintain continuous services at Rota. Rota serves a vital role in the military operations in Europe, North Africa and the Middle East and the Government would surely be harmed by an interruption in Rota's srvices. Def.'s Response at 15-16. If the stay pending appeal is granted, the Government would be forced to undergo competition for a new bridge contract which may be laborious and result in the disruption of service at Rota. Def.'s Response at 17.

Algese's claim that the Government acted suspiciously in quickly terminating the bridge contract and simply could have renewed the contract to maintain the status quo is irrelevant for the sake of evaluating whether the Government will be harmed by a stay pending appeal. The Government, albeit acting very quickly, terminated the bridge contract and initiated the new contract within the limits of the law. The lack of a currently enforceable bridge contract significantly increases the harm the Government would suffer both in the potential disruption of Naval Station Rota and the cost of procuring a new bridge contract. For these reasons, the balance of harms weighs in favor of denying the stay pending appeal.

4. Harm to Public Interest

The public has a strong interest in maintaining the integrity of the procurement process. Sys. Appl'n & Techs., Inc. v. United States, 100 Fed. Cl. 687, 721 (2011). The Court's March 4, 2016 decision found that the public's interest in maintaining the integrity of the procurement process weighed in favor of Algese. Now, two things have changed. First, the Navy's remand decision, which the Court found reasonable, shows that the procurement process did not lack integrity. Second, the absence of a bridge contract now makes an injunction a threat to national security and international stability. When national security is at issue, the interest of maintaining a competitive procurement process is outweighed. McAfee, Inc. v. United States, 111 Fed. Cl. 696, 715 (2013). Rota is a central asset to both national military operations and international organizations such as NATO and the United Nations. See Def.'s Response at 15-16. Moreover, the Government is concerned that negotiating a bridge contract, and any associated delay, will cause unrest

among the 172 Spanish employees who already sabotaged equipment and went on strike during previous labor negotiations in 2013.  <u>Id.</u> at 16-17.  The risk posed to the proper functioning of the nation's military bases outweighs the public interest in maintaining the integrity of the procurement process, especially given that such integrity is also protected by the appeals process.  The public's interest in maintaining national security strongly weighs in favor of denying Plaintiff's motion for a stay pending appeal.

<u>Conclusion</u>

Under the current circumstances, injunctive relief is not proper in this case.  Algese fails to demonstrate that the four necessary factors weigh in its favor.  Algese is unlikely to succeed on the merits.  In addition, the equitable considerations do not weigh in Algese's favor.  Instead, the equitable considerations support denying the stay in order to prevent substantial hardship to the Government and to protect the public interest.

For these reasons, Algese's motion to stay judgment pending appeal is DENIED.

This decision is filed under seal.  On or before August 25, 2016, counsel for the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information and submit to the Court any proposed redactions to this opinion before it is released for publication.  The parties are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge